Good morning ladies and gentlemen. Our first case for this morning is United States v. McCaw. Mr. Tassif. Thank you and good morning. George Tassif and Michael Chandra from the Federal Public Defender's Office in Peoria, Illinois for the defendant Bobby McCaw. In this case we appeal the district court's order denying a motion to suppress and contend that a Rock Island City police officer acting solely on the basis of an uncorroborated tip conveyed to him by a nightclub's owner. The two anonymous individuals had reported to him or to bar staff that a white male in the club wearing a black hat, a gray t-shirt, had a gun in his waist. He seized and searched Mr. McCaw without reasonable suspicion that he was engaged in criminal activity. So here's what I take action on the basis of tips from somebody who they know where they don't dig back into further layers of how that information came to them. Somebody will say I saw a man running down the street or they'll say something and and I just wonder under your theory how far back they're supposed to dig in this chain for something like reasonable suspicion. When a case such as this involving these facts, the totality of the circumstances presented to Officer Holmes was that a bar owner, whom he knew, summoned him and reported that two unknown individuals had reported that a white male, black hat, gray shirt, had a gun. Mr. Terry, the nightclub owner, in effect was the conduit of information that involved two anonymous individuals whose information was conclusory at best. What begs the question here, any officer I respectfully submit should say, is okay. Certainly this is something that needs to be looked at, but the question here that is begged is how do the tipsters know of what they speak? Unlike the situation in Robinson this court addressed, two known sources approach Rock Island Police Department officers and tell them that Abraham Robinson was in possession of a firearm. The officers in that case relying on these two known tipsters who were conveying second-hand information already knew that Mr. Robinson was a convicted felon. They already knew of Mr. Robinson's history of gang violence, firearms, and illegal activity. Therefore the tip conveyed by the two known tipsters resonated with the police in such a way as to give them the reasonable suspicion. Well what incentive would Mr. Peters have had to falsely accuse somebody? I mean these two patrons come up, they're people who were at his bar, right? We know at least that much about them. They're at the daiquiri factory. And they tell him this and he's sufficiently concerned that he wants to contact the police. I'm clear on how you think it's supposed, how much investigation the police are supposed to devote to, you know, the people who gave the tip. Whether it has to say you have to go off in a corner so the police can talk to you or, you know, what you think should have happened. Well as far as Mr. Peters concerns, Peters didn't testify at the motions press. He did not convey to the court under oath what his state law, state law, 430 Illinois compiled statute, section 66-65, and 235 Illinois compiled statute 5-10-1 cited in our reply brief, those two statutes require that an owner of an establishment serving alcohol who knowingly fails to prohibit concealed firearms on the premises is subject to stiff penalties and fines under the Liquor Control Act. So Mr. Peters interest here to protect his liability and that of his tavern is to convey to the police every tip he gets and let them sort it out. So in that instance, Peters interest under the statute is to is to report to police and then police are to act consistent with reasonable suspicion of criminal activity before one is seized and searched under Terry. So in this instance where the officer is relying upon a tip by a known source but the tip being conveyed would otherwise fail in every respect as forming reasonable suspicion that a particular individual is doing something illegal. It essentially turns the Fourth Amendment on its head and reasonable suspicion requirement of Terry v. Ohio into the identity of the tipster. Respectfully, the government's position here and the argument that was raised in the district court below is that the only inquiry is whether who is the tipster. If the police know the tipster, therefore they can presume reliability to the tip being conveyed however conclusory it is in its terms and both being anonymous in this instance and then engage in a Fourth Amendment seizure and search as a result. So respectfully in that instance that that would eviscerate Fourth Amendment guarantees and relieve police of formulating probable cause under the, excuse me, reasonable suspicion of the totality of circumstances before they seize an individual and restrain his freedom of movement. So could I just interrupt and say you I take it that you do agree that if there were reasonable suspicion then the initial frisk where he finds the gun tucked in the waistband flows from that and if I can compare this situation to the situation in the Wooden case where the tipster in that case the phone caller reports that there was a domestic dispute and that the tipster saw or saw his domestic partner. And this court in Wooden said that the need for prompt action in that case was that the tipster witnessed the act of drawing and pulling the gun on an individual and the likelihood that if he would do that to a loved one or a domestic family member he would do it again. So the police needed to act promptly. In this instance the police arrived there was no claim that the man some individual was brandishing the firearm, threatening anyone with a firearm. Indeed when the police approached Mr. McCall he was not engaged in any furtive or secretive behavior. He was not seeking to flee. He did not appear as in Robinson to have a large object in his pocket or favoring one pocket or a manner of gait. The police approached and immediately then officers seized Mr. McCall from behind by placing his hands on both hips which even the magistrate judge stated on the record did not appear to be the kind of way that you would seek to gain someone's attention in a barroom. What should Holmes have done in that? He should have approached. With that encounter. He should have approached. Once he identified or pointed out. Officer Holmes should have approached. There were three officers standing by with him. Should have approached Mr. McCall. Identified himself. He was in plainclothes as a police officer and in fact walked by Mr. McCall on his way to the bar to talk to the bar owner. Before he was pointed out. Before he was pointed out. So the officer then approaches him. He should have identified himself and asked questions about what he was doing because at the time that Mr. McCall was approached he was merely dancing on the dance floor with his girlfriend with a beer in his hand as were many other people at the refractory at that hour of the morning. So in consensual encounters police can always approach people and ask questions and then unlike the situation in Hopes in that case relied upon by the government the police relied upon second-hand information by a operator of a halfway house for convicted felons. When they approached Mr. Hopes to investigate some concerns that were police and in that instance the court said clearly the response to the officer's approach provided additional grounds to raise reasonable suspicion. That's not the case here. So respectfully we ask that this court reverse the order of the district court remand this matter for further proceedings. Thank you. Thank you. Mr. Walters. Good morning, your honors. May it please the court. Greg Walters on behalf of the United States. So Mr. Walters, this does trouble me. You know what the Supreme Court was worried about in JL was how easy it would be to call in a tip and say you know I'm the tipster. You know me. I'm calling you the police officer and I say there's a man in this room who has a beard and he's wearing a dark robe and I know that he has a gun and maybe I'm just saying that because I've decided to make an annoying day for my colleague here to my right but you know all I've done actually is just described him. I haven't in any way indicated why I might think or not think that he's carrying a gun and the risk that the court's talking about in JL is precisely that risk. So here we have the same thing. Yes they've described Mr. McCaw. We don't know anything at all to know why anybody thinks he has a gun and it seems to me if the bar owner wants to proceed with the police at a minimum he'd say I need to take your name you know so that when the police come I can you know get them to talk to you so that they'll know why you think this is the case. Pretty easy. That is easy from a bar owner's perspective to to ask for a name. I mean to place myself in the position though of a bar owner under that circumstance I think it was probably a little more hairy for him and and what I think is distinguishable from JL your honor to answer that question is although we don't know the basis for either customers knowledge what we do know though is two customers two different ones come up. Why is that? They could have chatted with each other and say you know we don't like McCaw he's kind of a jerk you know let's get the know anything about who these people were or why they came to the conclusion that they wanted to go talk to the bar owner and say he had a gun because we really can't I mean actually ex-post we know he did have a gun but that's not the way we're supposed to look at this. Yes the two could have theoretically colluded. Pretty easy they're in a bar they're chatting I don't see where there's any lack of opportunity to do that. No and nor respectfully do I believe though that the government has to negate every possibility of nefarious action on the part of the tipsters. But I'm just saying you can't rely on this as something that really boosts anything because you know nothing about it. I agree that the government doesn't have to negate everything but we need to see if the fact that officer Holmes knew Mr. Peters the bar owner is that enough to create the kind of solid basis for at least a Terry stop. We're all agreeing I think that this is a Terry stop. We agree with the district court that under the totality of the circumstances and that included the no tipster being Kyle Peters but that factor alone the district court and adopting the R&R didn't find would be sufficient possibly but it was a totality of the circumstances. What other circumstances boost I mean I've told you I'm not terribly impressed by the fact that he said two customers talk to him since we don't know who they are or why they know anything. Well it's he could have said everybody in the bar who's told me has told me this but I don't know. Your honor though I think though again going to your honors point could have they colluded yes but I don't think it was unreasonable at all for the magistrate I think it was a common-sense conclusion and I understand you disagree but that with two people coming forward that that increases the probability of accuracy and reduces the risk of fabrication. But we don't know if they were related, unrelated, knew each other, didn't know each other. We don't your honor but when that is combined though I think what is applicable is even from this court's decision in Robinson in which it stated that the fact that the the person who did come forward in this case Kyle Peters was willing to identify himself. This court found that significant and suggested that the person who came forward found credible the information that they received and I think when we take into account that Kyle Peters did come forward and identify himself and and the court asked Mr. Tassif you know what would his motive be certainly he did have a motive to make sure he'd have his liquor license but he also has a motive to ensure that his bar is safe and he doesn't want to falsely accuse a patron. I don't think any reasonable business owner would want to do that so when we take that into account on top of two people coming forward to him that I think that is corroborative and then saying that it's in his waistline both of them so that's specific and then we look at the circumstances under which the police had to act. Could have they done a consensual encounter? Yes, but that's not the inquiry. The inquiry is under what circumstances they had to act and we do have information of an ongoing crime late at night in a bar where there's alcohol. You could say that you could go into probably any bar especially now that guns are ubiquitous and find somebody who had a gun. Maybe a lot of people are entitled to have a gun. Maybe some people are not because they are felons. It strikes me that if you just say somebody has a gun in here and you don't know anything there's much less corroboration here than in Robinson for sure. And we acknowledge that in our brief your honor. The reason we relied upon Robinson though was the point of taking this out of the context of JL to some extent because even in Robinson the second-hand information which we have in this case second-hand information but the two people that came forward were known to the police. The person that came forward here was known to the police. But the police don't, I mean the problem is that the police don't know what kind of screen Mr. Peters is using when he thinks of the information passed along by the customers. He may, since he's got the officer's cell phone number, have you know an indifferent attitude about oh you know let's get the police come check this out. You know if there's nothing there everybody will go their merry way and if there is my bar is safe. You know it I'm not sure that as they say rises to the level of reasonable suspicion. Again I think though the three circumstances in the totality, and I understand the court's reservation, but between Mr. Peters coming forward which again this court in Robinson found significant that someone was willing to come forward to forward the tip that came from two individuals and we believe that's corroborative. And then under the circumstances of it being in a club late at night where firearm possession is prohibited and your honors it is a combustible situation and it's a Hobson's choice for the police. I mean we can open up the paper every so often and find somebody who has shot somebody in a leg or perhaps more recently even shot himself in the leg with an NFL football player. But... Well as I understand the sequence, Peters instructed the bouncer to find, they knew there's some officers outside I guess there's five or six of them that sort of mill around in that area at that time of the morning anticipating maybe they are hoping to override some problem. I don't know exactly what the encounter was because I understand that the bouncer went out and found Holmes and said Peters wanted to see him. Is that right or is it some other sequence? No that's correct your honor. It started with the bar owner Kyle Peters told the bouncer I tried to text officer Holmes he hasn't responded go find him and he asked for Holmes by name so the bouncer went out found officer Holmes among those five or six officers Holmes then comes back and meets with Kyle Peters in the bar. So Holmes and Peters are at least acquainted they know each other at least under that type of circumstance in that context. And I believe that's limited to that context. So I assume then that there's some in Holmes mind of some credibility is with with Peters is that what you're trying to say or say that that's where the credibility is? I think the credibility is twofold. First that I mean primarily it's just that that Peters is willing to identify himself to Holmes. Why is he at risk if he's just the bar owner seeking police protection? It's not like he's a drug dealer who's coming forward to to the police officer. Why wouldn't he identify himself to Holmes? Why would he not be happy to identify himself to Holmes? I agree but but I think that's part of the inquiry as opposed to him just calling in and saying something's at the daiquiri factory and okay so it's the same thing and I'm seeing I'm out of time. You're out of time. Okay well thank you very much. Judge Manning did you have any other? Well the only thing I just going on the It's not a matter of identifying himself. No. He knew he was the bar owner. Yes he did. And then the bouncer comes out and says that Peters wants to see him and that's why he went in there. He knew who it would be. I assume he found Peters in a hurry. He did and I just didn't want to mislead the court that I don't know what the relationship is any more than Holmes patrols downtown and he has a number of bar owners phone numbers or the bar owners has his phone numbers for thank you your honors. All right thank you. I think you have I'll give you a full minute Mr. Tessa. I think it might have been about 30 seconds. Indeed Kyle Peters was willing to come forward to report these tips because state law would impose financial liability upon him and the risk of losing his liquor license if he didn't. Every bar owner that is going to report any rumor any tip and any to avoid being mauled for damages or being assessed these kinds of liabilities that Illinois law does. Secondly Florida versus jail clearly holds. Supreme Court said we're not creating a firearms exception here where there are tips about people with guns. It doesn't relieve the officers of their responsibility to have reasonable suspicion based on particularized facts before an individual is seized and then searched within the constitutional confines of Terry versus Ohio. So on these facts clearly the Wooden decision and the Robinson decision are clearly distinguishable and for these reasons we ask that the court reverse and remand the further proceedings. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.